UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-21910-MGC

ARIEL MARANTES

    Plaintiff,

v.

MIAMI-DADE COUNTY, *et al.*,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Ariel Marantes ("Plaintiff" or "Mr. Marantes") brings this action against Defendants Miami-Dade County (the "County") and County Police Officer Russell Giordano ("Officer Giordano"). Plaintiff alleges claims of excessive force in violation of 42 U.S.C. § 1983 against Officer Giordano in his individual capacity (Count I). *See* ECF No. 1-1, ¶¶ 30–38. Against the County, Plaintiff alleges a state law claim for battery (Count IV). *See* ECF No. 1-1, ¶¶ 59–64. Counts I (against Defendant Officer Ruperto Peart), II, and III of Plaintiff's Amended Complaint ("Complaint") were dismissed. *See* ECF Nos. 11, 26. Both Defendants filed a joint Motion for Final Summary Judgment (ECF No. 54) and Statement of Material Facts in Support of Motion for Summary Judgment ("Statement" or "SMF") (ECF No. 53). In response, Plaintiff filed his Response in Opposition ("Response") (ECF No. 64); however, he did not submit a statement of material facts in compliance with Local Rule 56.1. Defendants then filed their Reply (ECF No. 72). I have reviewed the Parties' arguments, the record, and the relevant legal authorities. For the reasons provided in this Order, Defendants' Motion for Final Summary Judgment is granted.

### I. BACKGROUND

As a threshold matter, Plaintiff did not comply in two significant ways with Local Rule 56.1 governing Motions for Summary Judgment. First, Plaintiff did not submit a separate statement of material facts that corresponds with the paragraph numbering scheme used by Defendants, as required by Rule 56.1(a). Second, the statement of facts included in

1

Plaintiff's Response in Opposition cannot even generously be construed as compliant because the facts are not once supported by specific references to pleadings, depositions, answers to interrogatories, admissions, or affidavits on file with the Court, as required by Rule 56.1(a)(2). Plaintiff does not mention any of his attached exhibits until the last two pages of his Response, which is written more as a list of his exhibits than a statement of facts responsive to Defendants' Statement. As such, all the material facts set forth in Defendants' Statement are deemed admitted, since they are supported by evidence in the record.

The events leading to the filing of this action transpired on August 14, 2012 outside the Latin American Cafeteria in Miami Florida. *See* SMF, ¶ 1. Officers Giordano and Ruperto Peart, Sergeant Jorge Rodriguez, and Lieutenant Jose Gonzalez were standing outside the coffee window at the Latin American Cafeteria around 2:00 p.m. *Id.* While standing near the window, the officers saw Mr. Marantes walking towards a moving car in the parking lot and yelling. SMF, ¶ 2; Giordano Dep. 24:4–26:8. Mr. Marantes continued to yell and move towards the car, challenging one of the people in the car to a fight. Peart Dep. 35:4–38:10. The other person got out of the car and walked around towards Mr. Marantes, who took off his shirt before engaging in a fistfight with the person. *Id.*; SMF, ¶ 3; Giordano Dep. 26:23–27:16. After seeing the fight break out, the police officers approached Mr. Marantes and the other person to break up the fight. SMF, ¶ 4. Officer Giordano went to his car to retrieve his badge and gun, and then went to assist Officer Peart with Mr. Marantes. *See* Giordano Dep., 35:12–17; 43:1–4. At this time, Mr. Marantes was subdued by Officer Peart; however, after Officer Peart left to help restrain another individual actively fighting police, Mr. Marantes began to flail around and tried to stand up. Giordano Dep., 36:4–8. At one point, Mr. Marantes grabbed Officer Giordano and tried to punch him in the face. *Id.*, at 36:24–37:16. Officer Peart came back to assist Officer Giordano and Officer Giordano left to get handcuffs out of his car. *Id.*, at 38:16–23. When Officer Giordano returned, Mr. Marantes was actively squirming and fighting with Officer Peart and was not allowing the officers to handcuff his hands behind his back. *Id.*, at 40:24–41:9. Officer Giordano saw Mr. Marantes grab Officer Peart and swing his fist at him. *Id.*, at 42:5–13. When Officer Peart could not "flip" Mr. Marantes over to be able to handcuff him behind his back, Officer Giordano kicked Mr. Marantes to get him to comply. *Id.*, at 46:25–47:24. Defendants submitted a partial video of the incident in support of their Motion, and it is right around

this point that the video begins. The video shows Officer Giordano kick Mr. Marantes four times. *See* Video, at 00:00–00:05. He did not use his full force when employing the kicks. *Id.*; SMF, ¶ 8. The kicks landed on Mr. Marantes' arms and side. *See* Video, at 00:00–00:05; SMF, ¶ 7. Even after Mr. Marantes was kicked, he continued to roll around and extend and stiffen his arms—preventing police from handcuffing him. *See* Video, at 00:05–00:12. It ultimately took all three officers to place Mr. Marantes in handcuffs. *See* Video, at 00:13–00:45. Mr. Marantes claims he was not making any threat of force or kicking any officer; he was just trying to get off the hot asphalt. Response, p. 2, 4, 5. The video shows that Mr. Marantes continued to attempt to stand up and move away from Officer Giordano even after he was handcuffed. *See* Video, at 01:00–01:08. Overall, it took around five to ten minutes to place handcuffs on Mr. Marantes. Peart Dep. 80:20–81:2.

Mr. Marantes was arrested and charged with two counts of battery on a law enforcement officer, and one count of resisting with violence. SMF, ¶ 12. He eventually plead guilty to resisting without violence. SMF, ¶ 18. Before being taken to the county jail, Mr. Marantes was taken to Jackson South Community Hospital, where he was evaluated. *Id.*, ¶ 13. Mr. Marantes maintains he "had to undergo life support procedures," *see* Response, p. 2; however, the records he submitted in support of his Response show he only stayed at the hospital for about three and a half hours and was diagnosed with abrasion of the face and scalp, as well as hematoma, contusion, and laceration. *See* Jackson Health System Records, ECF No. 64-2. Four days later, Mr. Marantes returned to Jackson South Community Hospital, complaining of "pain all over with persistent nausea and vomiting." *See* Jackson Health System Records, ECF No. 53-7. Mr. Marantes was kept overnight for monitoring and given fluids intravenously, after which he showed improvement and was discharged. *Id.* His final diagnosis upon discharge was rhabdomyolysis, as well as acute renal insufficiency secondary to the rhabdomyolysis. *Id.* His renal insufficiency was temporary. SMF, ¶ 16.

Both Defendants now seek summary judgment as to Counts I and IV of Mr. Marantes' Amended Complaint.

## II. LEGAL STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). "[T]he plain language of [Rule 56(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*, at 380.

### III. DISCUSSION

#### A. Count I: Excessive Force

Mr. Marantes alleges in Count I that Officer Giordano used excessive force against him in violation of 42 U.S.C. § 1983. Officer Giordano argues he is entitled to qualified immunity for his actions in arresting Mr. Marantes. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "Qualified immunity offers 'complete protection for government officials sued in their individual capacities as

4

long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (quoting *Thomas v. Roberts,* 261 F.3d 1160, 1170 (11th Cir.2001)). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "To receive qualified immunity, the government official must first prove that [he] was acting within [his] discretionary authority." *Dalrymple*, 334 F.3d at 995. Once that has been established, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* To meet his burden, Mr. Marantes must show the violation of a constitutional right, and that such right was clearly established at the time of the alleged incident. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

There is no question that Officer Giordano was acting within his discretionary authority as a police officer at all times relevant to this action. *See Lee*, 284 F.3d at 1194 (holding, in an excessive force case, "there can be no doubt that [the officer] was acting in his discretionary capacity when he arrested [the plaintiff]."). I must then analyze whether Mr. Marantes has shown that Officer Giordano violated a constitutional right and whether such right was clearly established at the time he arrested Mr. Marantes.

### a. Violation of a Constitutional Right

The Fourth Amendment prohibits officers from using excessive force when conducting an arrest. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). A claim "that [a] law enforcement official[] used excessive force in the course of making an arrest . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Id.*, at 388. The test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*, at 396. The "reasonableness 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight' and . . . '[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'" *Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (quoting *Graham*, 490 U.S. at 396–97.).

Based on the facts as laid out by the Parties, it is clear that Mr. Marantes was a resisting arrestee. The Eleventh Circuit has repeatedly held that the use of force is not excessive on similar facts when the plaintiff was resisting arrest, with or without violence. In *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2012), the court held that the officer's actions were constitutional where the officer employed the use of a taser when arresting the plaintiff for a vehicle tag violation. The plaintiff was "hostile, belligerent, and uncooperative," and refused to comply with no less than five verbal commands. *Id.* In *Walker v. City of Orlando*, 368 F. App'x 955, 956 (11th Cir. 2010), there was no constitutional violation where the officer, responding to a call of shots being fired in the air, repeatedly struck plaintiff in the head, neck, and back with the butt of a service rifle for failure to get on the ground when instructed to do so. In *Robinson v. Arrugueta*, 415 F.3d 1252, 1256 (11th Cir. 2005), the court held the officer did not use excessive force where he shot the suspect, who later died, after the suspect refused orders to put his hands up and the suspect's car was rolling towards the officer, even if the officer could have moved out of the way. Many similar cases exist. *See e.g.*, *Benton v. Hopkins*, 190 F. App'x 856, 859–60 (11th Cir. 2005) (holding it was not excessive force for officers to use pepper spray and a metal baton on a suspect who was resisting arrest for driving with a suspended license); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559–60 (holding it was not unconstitutional to place plaintiff in five-second choke hold when plaintiff raised his hands after being told he was under arrest for violating building code).

The facts of this case are strikingly similar to *Gomez v. Lozano*, 839 F. Supp. 2d 1309, 1317–18 (S.D. Fla. 2012). In *Gomez*, the court found that

> Officer Blanco did not use excessive force. To begin with, the crime that Mr. Gomez allegedly committed—resisting Officer Chambers's arrest—while not severe, is not minor. And though I understand that Mr. Gomez maintains that he struggled only because (1) he did not know who grabbed his arm and (2) the police officers were suffocating him, Officer Blanco could certainly believe otherwise. After all, Officer Blanco was attempting to control Mr. Gomez's feet, not his upper body, so a reasonable officer had no way of knowing that Mr. Gomez was suffocating. Next, though Mr. Gomez's risk of flight was minor, for numerous officers surrounded him, Officer Blanco could feel some threat from Mr. Gomez. Mr. Gomez began by resisting Officer Chambers, and after being tackled, he began squirming and trying to escape from Officers Chambers' and Blanco's holds. And although neither Officer Blanco nor Officer Lozano told Mr. Gomez to stop resisting, Mr.

> Gomez escaped their holds, getting up to his knees. A reasonable officer in Officer Blanco's position, therefore, could reasonably believe that Mr. Gomez was resisting and attempting to fight back, posing a risk.

*Gomez*, 839 F. Supp. 2d at 1317–18 (S.D. Fla. 2012) (internal citations to the record omitted). In the instant case, the crime to which Mr. Marantes eventually pled guilty was resisting arrest—not a minor offense. Officer Giordano had seen Mr. Marantes instigate a fistfight. Peart Dep., 35:7–22. While Officer Giordano was trying to subdue Mr. Marantes, Mr. Marantes grabbed Officer Giordano and attempted to punch him. *See* Giordano Dep., at 36:24–37:16. Officer Peart came back to assist Officer Giordano and Officer Giordano went to get handcuffs. *Id.*, at 38:16–23. When Officer Giordano returned, Mr. Marantes was still resisting Officer Peart, including grabbing him and swinging a fist at him. *Id.*, at 42:5–13. When Mr. Marantes continued to defy Officer Peart's attempts to handcuff him, Officer Giordano employed four distractionary kicks that did not use all of his force. *See* Video, at 00:00–00:05; SMF, ¶ 8. After the kicks, Mr. Marantes continued to squirm around and stiffen his arms, *see* Video, at 00:05–00:12, and continued to try to move away after he was handcuffed. *Id.*, at 01:00–01:08. After seeing Mr. Marantes instigate a physical altercation with another person, after having been swung at by Mr. Marantes and seeing Mr. Marantes swing at Officer Peart, and given the fact that Mr. Marantes continued for several minutes to resist arrest, Officer Giordano could have reasonably believed that Mr. Marantes posed a threat and could be attempting to flee. Even if Mr. Marantes had simply been trying to get himself off the hot asphalt, Officer Giordano, in the heat of the moment, could easily have interpreted his actions as resisting arrest.

Mr. Marantes claims that he received extensive injuries from Officer Giordano's kicks, necessitating life support, and this shows that Officer Giordano's use of force was excessive. It is true that "[t]he nature and extent of physical injuries sustained by a plaintiff are relevant in determining whether the amount and type of force used by the arresting officer were excessive." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1325 (11th Cir. 2017). However, a three and half-hour stay at the hospital seemingly contradicts the assertion that Mr. Marantes was on life support. His medical records also show that any kidney issues were temporary. SMF, ¶ 16. Nevertheless, even taking the slim evidence of severe injury in the light most favorable to Mr. Marantes, he has submitted no evidence to show that his

injuries resulted specifically from Officer Giordano's kicks—especially where force was used by other officers during the same incident. Taking the totality of the circumstances into consideration, the four kicks by Officer Giordano were not excessive and Officer Giordano is entitled to qualified immunity.

### b. Clearly Established Law

Even if Mr. Marantes had met his burden of showing a violation of a constitutional right, he did not show the law clearly established Officer Giordano's conduct as unconstitutional. The law clearly establishes a constitutional right in two situations. First, if the case law of the Supreme Court, Eleventh Circuit, or Florida supreme court, "in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)). Second, the right is established where the plaintiff has shown "the official's conduct was so far beyond the hazy border between excessive and acceptable force that . . . every reasonable officer would conclude that the excessive force used was plainly unlawful." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1292 (11th Cir. 2009) (internal citations omitted). The case law is clearly in Officer Giordano's favor. The Eleventh Circuit has frequently granted qualified immunity to officers using force when dealing with a resisting arrestee. *See, e.g.*, *Hoyt v. Cooks*, 672 F.3d 972, 977–78 (11th Cir. 2012) (granting qualified immunity to officers who used their tasers on a prone arrestee who resisted arrest by keeping his arms outstretched and rolled around to avoid being handcuffed); *Lewis*, 561 F.3d at 1292 (holding officers were entitled to qualified immunity where arrestee died after being hogtied, even though he was not a danger to officers and was "merely resisting arrest," because he was unable to remain calm); *Draper*, 369 F.3d at 1278; *Walker*, 368 F. App'x at 956; *Robinson*, 415 F.3d at 1256; *Benton*, 190 F. App'x at 859–60; *Post*, 7 F.3d at 1559–60.

Mr. Marantes cites to *Edwards v. Stanley*, 666 F.3d 1289, 1296 (11th Cir. 2012), to support his argument that Officer Giordano should have used less force in arresting Mr. Marantes. However, the facts of the case are readily distinguishable. In *Edwards*, the officer allowed his dog to attack the plaintiff for five to seven minutes *after* the plaintiff had stopped resisting; he was on the ground asking to surrender and could easily have been arrested. *Id.* That is not the case here, where Mr. Marantes, as seen on video, was clearly not submitting

to arrest. Mr. Marantes next argues that Officer Giordano's kicks were so egregious that "every reasonable officer would conclude that the excessive force used was plainly unlawful." *Lewis*, 561 F.3d at 1292. Had Mr. Marantes not been resisting arrest, this could possibly be true; however, "the Eleventh Circuit has offered police officers wide discretion in reacting with force when the police officer believes that a suspect resists arrest." *Gomez*, 839 F. Supp. 2d at 1320. Mr. Marantes has not shown that case law of the Supreme Court, the Eleventh Circuit, or the Florida Supreme Court has staked out a bright line clearly establishing Officer Giordano's kicks in this situation as unconstitutional, nor has Mr. Marantes shown that Officer Giordano's conduct in this instance is "so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1292. Officer Giordano is entitled to qualified immunity for his actions at issue in this case.

   **B. Count IV: Battery**

In Count IV, Plaintiff alleges a Florida state law battery claim against the County for Officer Giordano's alleged use of excessive force.[1] The County claims it is entitled to summary judgment as to the battery claim because a municipality or subdivision "cannot be held liable for battery under Florida law unless the force used . . . was 'clearly excessive.'" *Kenning v. Carli*, 648 F. App'x 763, 771 (11th Cir. 2016). Mr. Marantes does not address this argument at all, presumably because it rests on the same reasonableness analysis governed by a Fourth Amendment excessive force claim. *Id.* As discussed in detail above, *see infra* Sec. III.A.a, Officer Giordano's kicks did not constitute excessive force. Therefore, the County is entitled to summary judgment as to the battery claim involving Officer Giordano.

## IV. CONCLUSION

Having reviewed the arguments and the record, there exist no genuine disputes as to any material facts for determination at trial. It is clear that, as a matter of law, Officer Giordano's kicks did not constitute excessive force and he is entitled to qualified immunity. The County is entitled to summary judgment on the state battery law claim.

---

[1] Count IV initially included the actions of Officer Peart; however, the individual claim against Officer Peart was dismissed because he was entitled to qualified immunity. *See* ECF No. 11. While the battery claim was reinstated upon Mandate from the Eleventh Circuit, supplemental jurisdiction remained only as it pertained to Officer Giordano. *See* ECF No. 26.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendants' Motion for Final Summary Judgment (ECF No. 54) is **GRANTED**.
2. The Clerk is directed to **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*. A separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure shall issue concurrently.

**DONE and ORDERED** in chambers, at Miami, Florida, this 14th day of August 2017.

*(signature)*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*